Evan J. Smith
BRODSKY & SMITH, LLC
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CATHERINE NICHOLS,<br><br>                        Plaintiff,<br><br>        v.<br><br>WELBILT, INC., WILLIAM C. JOHNSON, CYNTHIA M. EGNOTOVICH, DINO J. BIANCO, JOAN K. CHOW, JANICE L. FIELDS, BRIAN R. GAMACHE, and ANDREW LANGHAM,<br><br>                        Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>(1)   Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)   Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, Catherine Nichols ("Plaintiff"), by and through her attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this action against Welbilt, Inc. ("Welbilt" or the "Company"), and the Company's Board of Directors (the "Board" or the "Individual Defendants", collectively with the Company, the "Defendants") for violations of § 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") as a result of efforts to sell the Company, through merger vehicles, Ascend Merger Corp. ("Merger Sub"), and Ali Group North America Corporation ("Acquirer") to Ali Holding S.R.L. ("Parent" and together with Merger Sub and Acquirer, "Ali") as a result of an

unfair process, and to enjoin an upcoming stockholder vote on an all cash proposed transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in an July 14, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").   Under the terms of the Merger Agreement, Welbilt will become an indirect wholly-owned subsidiary of Acquirer, a subsidiary of the Ali.  Welbilt public stockholders will receive, in exchange for each share of Welbilt common stock they own, $24.00 in cash. Welbilt shareholders will thereafter be frozen out completely of any ownership interest in the surviving company.

3.      Thereafter, on August 10, 2021, Welbilt filed a Preliminary Proxy Statement on form PREM14A with the SEC in support of the Proposed Transaction (the "Preliminary Proxy Statement").

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, the Preliminary Proxy Statement describes an insufficient process in which the Board rushed through a sales process in which the Board failed to conduct a proper market check, resulting in the entry into a previous merger agreement with Middleby Corporation and its affiliates (the "Middleby Transaction"), which was terminated in favor of the Proposed Transaction, triggering the payment of a hefty termination fee by the Company.

5.      It appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6.      In violation of the Exchange Act Defendants caused to be filed the materially deficient Preliminary Proxy Statement on August 10, 2021 with the SEC in an effort to solicit

Plaintiff to vote her Welbilt shares in favor of the Proposed Transaction.  The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction. As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Welbilt, provided by Welbilt to the Company's financial advisor Morgan Stanley & Co. LLC ("Morgan Stanley"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Morgan Stanley and provided to the Board

7.     Accordingly, this action seeks to enjoin the Proposed Transaction.

8.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction or.

## PARTIES

9.     Plaintiff is a citizen of Florida and, at all times relevant hereto, has been a Welbilt stockholder.

10.     Defendant Welbilt provides the world's top chefs, premier chain operators and growing independents with industry-leading equipment and solutions.  Welbilt is incorporated under the laws of the State of Delaware and has its principal place of business at 2227 Welbilt Boulevard, New Port Richey, Florida 34655.  Shares of Welbilt common stock are traded on the NYSE under the symbol "WBT."

11.     Defendant William C. Johnson ("Johnson") has been a Director of the Company at all relevant times.  In addition, Johnson serves as the Company's President and Chief Executive Officer ("CEO").

12.     Defendant Cynthia M. Egnotovich ("Egnotovich") has been a director of the Company at all relevant times. In addition, Egnotovich serves and the Company's Chairperson of the Board.

13.     Defendant Dino J. Bianco ("Bianco") has been a director of the Company at all relevant times.

14.     Defendant Joan K. Chow ("Chow") has been a director of the Company at all relevant times.

15.     Defendant Janice L. Fields ("Fields") has been a director of the Company at all relevant times.

16.     Defendant Brian R. Gamache ("Gamache") has been a director of the Company at all relevant times.

17.     Defendant Andrew Langham ("Langham") has been a director of the Company at all relevant times.

18.     Defendants identified in ¶¶ 11 - 17 are collectively referred to as the "Individual Defendants."

19.     Non-Party Parent is an Italian private company that provides general management and consulting services. The Company offers administration of work, outplacement, corporate welfare, permanent selection, training, and human resource consulting services.  Parent is headquartered in Milan, Italy.

20.      Non-Party Merger Sub and Non-Party Acquirer are wholly owned subsidiary of Ali and a party to the Merger Agreement, created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

22.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the New York Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

24.     Welbilt, designs, manufactures, and supplies foodservice equipment for commercial foodservice market worldwide. The Company offers commercial upright and undercounter refrigerators and freezers, blast freezers and chillers, and cook-chill systems under the Delfield brand; and walk-in refrigerators, coolers and freezers, and prefabricated cooler and freezer panels under the Kolpak brand. It also provides traditional, combination, convection, conveyor, and rapid-cooking ovens, and range and grill products under the Convotherm, Garland, Lincoln, and Merrychef brands; fryers and frying systems under the Frymaster brand; and steam equipment under the Cleveland brand. In addition, the company offers cafeteria and buffet equipment stations, bins, boxes, warming cabinets, warmers, display and deli cases, and insulated and refrigerated salad and food bars under the Delfield, Merco, and other brand names; beverage dispensers, blended ice machines, ice/beverage dispensers, beer coolers, post-mix dispensing valves, backroom equipment, and support system components and related equipment; ice machines under the Manitowoc and other brand names; coffee equipment under the Crem brand name; and other beverage-related products under the Multiplex and Manitowoc brand names. Further, it provides after-market parts, and installation and start-up, and preventative maintenance services; spare parts supply for Welbilt products under the KitchenCare brand; designed kitchens under

FitKitchen brand; and KitchenConnect, a cloud based-application. It supplies its products to full-service restaurants, quick-service restaurant chains, hotels, resorts, cruise ships, caterers, supermarkets, convenience stores, hospitals, schools, and other institutions through dealers and distributors. The Company was formerly known as Manitowoc Foodservice, Inc. and changed its name to Welbilt, Inc. in February 2017. Welbilt, Inc. was founded in 1864 and is headquartered in New Port Richey, Florida.

25. The Company reported positive financial results in its most recent Press Release for the Fourth Quarter and Full Year 2020 Financial Results. For example, the Company reported net sales of $1.153 billion, adjusted EBITDA of $170.9 million and Net earnings were $20.2 million compared to net earnings of $18.4 million in the prior year.

26. Speaking on the positive results, Defendant CEO Johnson commented in the February 25, 2021 Press Release, "'We are pleased with our fourth quarter operating results as our sales, margins and cash flow all improved sequentially from the third quarter as the commercial foodservice industry continued to gradually recover. We are particularly pleased that our Adjusted Operating EBITDA margin exceeded last year's level despite the dilutive effect of the sales decline, and that our free cash flow was higher than last year's fourth quarter. Both of these are attributable to the improvements we have made to date as part of our Business Transformation Program ("Transformation Program") and through the cost containment actions we put in place earlier in the year that continued to benefit us in the fourth quarter.'"

27. The impressive financials and optimism are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by Welbilt. Clearly, the Company is likely to have tremendous future success and should command a much higher consideration than the amount contained within the Proposed Transaction.

28. Despite this potential, the Individual Defendants have caused Welbilt to enter into the Proposed Transaction for insufficient consideration.

***The Flawed Sales Process***

29.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible no matter the price.

30.     First, the Preliminary Proxy Statement notes that neither the Company nor anyone on its behalf conducted a market check for potentially interested third parties at any point during the sales process, including in the lead up to the Middleby Transaction.

31.     Such an oversight clearly led to the Company missing out on a potentially beneficial bidding war, as evidenced by the rise of the Proposed Transaction after the Middleby Transaction had been entered into by the Company. This glaring oversight has caused the Board to not only lose out on the potential for such a bidding war, but has required the Company to pay the costly termination fee associated with the Middleby Transaction.

32.     Furthermore, while the Preliminary Proxy Statement does make reference to the "Transaction Committee" of the Board, it fails to indicate what specific powers this committee had in relation to approval of any potential agreement.

33.     In addition, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Ali, whether this agreement differed from any other agreement with potentially interested third parties (including those not specifically mentioned by the Preliminary Proxy Statement) and if so in what way.

34.     The Preliminary Proxy Statement also fails to provide sufficient information regarding the terms of any such included "don't-ask, don't-waive" provisions or standstill provisions in any of the confidentiality agreements entered into between the Company on the one hand and any interested third party, including Ali, on the other during the sales process, including information relating to the specific conditions, if any, under which such provisions would fall away.

35.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

**The Proposed Transaction**

36.     On July 14, 2021, Ali and Welbilt issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **CHICAGO and NEW PORT RICHEY, Fla. –** July 14, 2021 – Ali Holding S.r.l. ("Ali Group"), one of the largest and most diversified global leaders in the foodservice equipment industry, and Welbilt, Inc. (NYSE:WBT) today announced that they have entered into a definitive merger agreement under which Ali Group will acquire Welbilt in an all-cash transaction for $24.00 per share, or approximately $3.5 billion in aggregate equity value and $4.8 billion in enterprise value. The merger agreement has been unanimously approved by the boards of directors of both companies.
>
> "We are pleased to announce this agreement with Welbilt and look forward to combining our highly complementary brands to create a comprehensive product portfolio and enhance our global footprint," said Filippo Berti, Ali Group Chairman and Chief Executive Officer. "We have long admired Welbilt's heritage, breadth of products, brand strength and management team, and together we will have an expanded range of innovative products. The transaction marks a significant milestone in Ali Group's history and will position us to better serve our customers and capitalize on attractive growth opportunities. We are excited to welcome Welbilt and its employees to the Ali Group family as we strengthen our global presence and continue to build on our culture of quality and innovation."
>
> "We are excited to reach this agreement with Ali Group, which delivers outstanding value to Welbilt shareholders, provides new opportunities for Welbilt employees and enables Welbilt to benefit from the expertise and resources of Ali Group," said Bill Johnson, Welbilt's President and Chief Executive Officer. "This transaction provides a compelling and certain cash value to Welbilt shareholders at an attractive premium and will create a global leader in the foodservice equipment and solutions industry with a full range of connectable foodservice solutions for our customers. I want to thank each of our employees for their hard work and dedication to the success of Welbilt, which has positioned us to reach this agreement today. On behalf of the Welbilt Board and management team, we are excited to work closely with Filippo and the Ali Group team as we bring our companies together."
>
> In addition, Carl C. Icahn (and affiliates), who owns 7.7% of Welbilt stock, has entered into a support agreement in favor of the transaction.
>
> **Approvals and Timing**

The transaction, which is not conditioned on financing, is expected to close in early 2022, subject to the satisfaction of customary closing conditions, including the approval of Welbilt shareholders. Upon completion of the transaction, Welbilt's shares will no longer trade on The New York Stock Exchange.

Welbilt today also confirmed that it has terminated the previous merger agreement entered into with The Middleby Corporation ("Middleby") on April 20, 2021. Per the terms of the Middleby merger agreement, Ali Group has paid Middleby a $110 million termination fee on Welbilt's behalf as agreed to in the Ali Group merger agreement. In light of the termination of the agreement with Middleby, Welbilt is cancelling its July 21, 2021, special stockholder meeting to approve the Middleby transaction. Welbilt expects to announce a special stockholder meeting to approve the Ali Group transaction at a later date.

**Advisors**

Goldman Sachs & Co. LLC has acted as Ali Group's exclusive financial advisor with financing provided by Goldman Sachs International and Mediobanca, and Alston & Bird is acting as legal advisor. Morgan Stanley & Co. LLC is serving as exclusive financial advisor to Welbilt, and Gibson, Dunn & Crutcher LLP is serving as legal counsel.

## *Potential Conflicts of Interest*

37.    The breakdown of the benefits of the deal indicate that Welbilt insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Welbilt.

38.    Notably, Company insiders, currently own large, illiquid portions of Company stock that will be exchanged for the merger consideration upon the consummation of the Proposed Transaction. However, while the Preliminary Proxy Statement provides the following, it fails to disclose an accounting of how much merger consideration these ownership amounts will be exchanged for upon the consummation of the Proposed Transaction:

| Name | Number of Shares Beneficially Owned | Percent of Shares Beneficially Owned |
|---|---|---|
| Cynthia M. Egnotovich(1) | 124,318 | * |
| Dino J. Bianco | 39,886 | * |

| | | |
|---|---|---|
| Joan K. Chow | 51,908 | * |
| Janice L. Fields(2) | 19,473 | * |
| Brian R. Gamache(3) | 35,853 | * |
| Andrew Langham | 34,972 | * |
| William C. Johnson(4) | 131,041 | * |
| Martin Agard(5) | 67,257 | * |
| Josef Matosevic | 185,804 | * |
| Joel H. Horn(6) | 77,290 | * |
| Richard N. Caron(7) | 106,066 | * |
| Jennifer Gudenkauf(8) | 8,038 | * |
| All current directors and executive officers as a group (11 persons)(9) | 696,102 | * |
| Carl C. Icahn(10) | 11,150,368 | 7.84% |
| c/o Icahn Associates Holding LLC | | |
| 767 Fifth Avenue, 47th Floor | | |
| New York, NY 10153 | | |
| The Vanguard Group, Inc.(11) | 11,120,683 | 7.82% |
| 100 Vanguard Boulevard | | |
| Malvern, PA 19355 | | |
| Invesco, Ltd.(12) | 10,016,888 | 7.05% |
| 1555 Peachtree Street NE, Suite 1800 | | |
| Atlanta, GA 30309 | | |
| BlackRock, Inc.(13) | 9,525,026 | 6.70% |
| 55 East 52nd Street | | |
| New York, NY 10055 | | |

39. Moreover, upon the consummation of the Proposed Transaction, the Preliminary Proxy Statement indicates that each outstanding Company stock option, restricted share, or other equity award will be canceled and converted into the right to receive certain consideration according to the merger agreement as follows:

| | Number of Shares Subject to | | Estimated Value of Vested Stock Options ($) | Estimated Value of Unvested Stock Options ($) |
|---|---|---|---|---|
| e of Named Executive Officer | Vested Stock Options (#) | Unvested Stock Options (#) | | |
| William C. Johnson | 77,492 | 219,522 | 725,363 | 2,078,427 |
| Martin Agard | 16,133 | 54,269 | 138,373 | 502,059 |
| Joel Horn | 55,342 | 38,901 | 393,540 | 348,875 |
| Richard N. Caron | 69,674 | 39,134 | 520,194 | 352,410 |
| Jennifer Gudenkauf | 2,051 | 16,961 | 20,489 | 161,226 |

| Name of Executive Officer or Director | Number of Shares Subject to Unvested Company RSUs (#) | Estimated Value of Unvested Company RSUs ($) |
|---|---|---|
| *Named Executive Officer:* | | |
| William C. Johnson | 113,441 | 2,722,584 |
| Martin Agard | 110,431 | 2,650,344 |
| Joel Horn | 31,030 | 744,720 |
| Richard N. Caron | 31,386 | 753,264 |
| Jennifer Gudenkauf | 10,004 | 240,096 |
| *Director:* | | |
| Cynthia M. Egnotovich | 8,174 | 196,176 |
| Dino J. Bianco | 8,174 | 196,176 |
| Joan K. Chow | 8,174 | 196,176 |
| Janice L. Fields | 8,174 | 196,176 |
| Brian R. Gamache | 8,174 | 196,176 |
| Andrew Langham | 8,174 | 196,176 |

| Name of Executive Officer | Number of Shares Subject to Unvested Company PSUs (#) | Estimated Value of Unvested Company PSUs ($) |
|---|---|---|
| William C. Johnson | 680,644 | 16,335,456 |
| Martin Agard | 162,520 | 3,900,480 |
| Joel Horn | 109,896 | 2,637,504 |
| Richard N. Caron | 112,036 | 2,688,864 |
| Jennifer Gudenkauf | 47,452 | 1,138,848 |

40.     In addition, certain employment agreements with certain Welbilt executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| | Cash ($)(1) | Equity ($)(2) | Welfare Benefits ($)(3) | Total ($) |
|---|---|---|---|---|
| William C. Johnson | 6,437,541 | 21,136,467 | 68,247 | 27,642,255 |
| Martin Agard | 2,493,350 | 7,052,883 | 46,394 | 9,592,627 |
| Joel Horn | 1,659,000 | 3,731,099 | 46,787 | 5,436,886 |
| Richard N. Caron | 1,591,850 | 3,794,538 | 45,041 | 5,431,429 |
| Jennifer Gudenkauf | 1,402,250 | 1,540,170 | 26,071 | 2,968,491 |

41.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

42.     Thus, while the Proposed Transaction is not in the best interests of Welbilt, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

### The Materially Misleading and/or Incomplete Preliminary Proxy Statement

43.     On August 10, 2021, the Welbilt Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation of the Exchange Act, failed to provide Plaintiff in her capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

44.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

   a.   The specific reasoning as to why no market check for potentially interested third parties was conducted by the Board, or anyone on its behalf, during the sales process, including prior to and after entry into the Middleby Transaction;

   b.   The specific powers of the Transaction Committee, including if it had the ability to veto potential strategic alternatives;

c.  Whether the confidentiality agreements entered into by the Company with Ali differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties, and if so, in what way;

d.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Ali, would fall away; and

e.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Welbilt's Financial Projections*

45.    The Preliminary Proxy Statement fails to provide material information concerning financial projections for Welbilt provided by Welbilt management and relied upon by Morgan Stanley in their analyses.  The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

46.    The Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Welbilt management provided to the Board and Morgan Stanley.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the

company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

47.     With regard to the "*Management Forecasted Financial Information*" projections the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

a. Adjusted EBITDA (burdened by SBC), including the underlying necessary inputs and assumptions of: GAAP operating income, depreciation and amortization expense, certain other one-time items such as restructuring activities and Welbilt's Business Transformation Program expense and certain other items (including what specific "certain other items" were utilized); and

b. Unlevered Free Cash Flow, including the all specific underlying inputs and assumptions used to calculate this metric.

48.     With regard to the "*April 2021 Consensus Forecasted Financial Information*" projections the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

a. Adjusted EBITDA (burdened by SBC), including the underlying necessary inputs and assumptions of: GAAP operating income, depreciation and amortization expense; and

b. Unlevered Free Cash Flow, including the all specific underlying inputs and assumptions used to calculate this metric.

49.     With regard to the "*July 2021 Consensus Forecasted Financial Information*" projections the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

a. Adjusted EBITDA (burdened by SBC), including the underlying necessary inputs and assumptions of: GAAP operating income, depreciation and amortization expense; and

b. Unlevered Free Cash Flow, including the all specific underlying inputs and assumptions used to calculate this metric

50.     The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

51.     This information is necessary to provide Plaintiff in her capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

52.     Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Morgan Stanley's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Morgan Stanley*

53.     In the Preliminary Proxy Statement, Morgan Stanley describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinion.

54.     With respect to the *Public Trading Comparables Analysis* the Preliminary Proxy Statement fails to disclose the following:

> a.   The specific inputs and assumptions used to determine the selected reference range of AV/2021E EBITDA (burdened by SBC) of 15.0x–17.0x; and
>
> b.   The specific inputs and assumptions used to determine the selected reference range of AV/2022E EBITDA (burdened by SBC) of 12.0x–14.0x.

55.     With respect to the *Discounted Cash Flow Analysis* the Preliminary Proxy Statement fails to disclose the following:

    a.   The specific inputs and assumptions used to determine Welbilt's unlevered free cash flows, including specifically: one-time costs including business optimization and restructuring costs, depreciation and amortization to arrive at EBIT, taxes, depreciation and amortization, capital expenditures, change in net working capital (including in the Management Forecasted Financial Information only, changes in other operating assets and liabilities), and deferred income taxes;

    b.   The specific inputs and assumptions used to determine the utilized range of terminal growth rates of 2.5% to 3.5%;

    c.   The specific inputs and assumptions used to determine the utilized discount rate range of 8.6% to 9.8%;

    d.   Welbilt's weighted average cost of capital; and

    e.   The specific inputs and assumptions used to determine the Welbilt's weighted average cost of capital, including but not limited to: market risk premium, risk-free rate, predicted beta, pre-tax cost of debt, effective tax rate as provided by Welbilt management, debt to total capitalization, and the sensitivity adjustment around the estimated cost of equity.

56.    With respect to the *Discounted Equity Value Analysis* the Preliminary Proxy Statement fails to disclose the following:

    a.   The specific inputs and assumptions used to determine the selected AV/NTM EBITDA multiple rate range of 11.0x to 13.0x;

    b.   The specific inputs and assumptions used to determine the utilized discount rate of 12.8%; and

    c.   Welbilt's cost of equity.

57.    With respect to the *Discounted Analysts' Future Price Targets* analysis the Preliminary Proxy Statement fails to disclose the following:

    a.   The amount of equity research analyst targets used;

b.  The identity of the equity research analysts that prepared the targets;

c.  The specific inputs and assumptions used to determine the utilized discount rate of 12.8%;

d.  Welbilt's cost of equity.

58.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

59.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public Welbilt stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

60.     Plaintiff repeats all previous allegations as if set forth in full herein.

61.     Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote their shares in favor of the Proposed Transaction.

62.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of her name to solicit any

proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

63.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

64.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

65.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

66.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

67.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to vote her shares in favor of the Proposed Transaction on the basis of complete information if such

misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

68.     Plaintiff repeats all previous allegations as if set forth in full herein.

69.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

70.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

71.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Welbilt's business, the information contained in its filings with the SEC, and its

public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

72.     The Individual Defendants acted as controlling persons of Welbilt within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Welbilt to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled Welbilt and all of its employees.  As alleged above, Welbilt is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act

WHEREFORE, Plaintiff demands injunctive relief, in her favor, and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing defendants to account to Plaintiff for damages sustained because of the wrongs complained of herein;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: August 20, 2021

**BRODSKY SMITH**

By: _____

Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*